*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RONALD CHARLES GOETZ,

        Defendant-Appellant.

UNPUBLISHED
July 29, 2026
10:01 AM

No. 369684
Chippewa Circuit Court
LC No. 2020-004055-FC

Before: GADOLA, C.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of one count of first-degree criminal sexual conduct (CSC) (victim under 13 years old), MCL 750.520b(2)(b), one count of first-degree CSC (multiple variables), MCL 750.520b, and two counts of conspiracy to commit first-degree CSC, MCL 750.520b. We affirm.

## I. BACKGROUND

This case arose after the victim, defendant's former stepson, reported that defendant and one of defendant's friends sexually assaulted him between the ages of 11 and 18. The victim described this abuse at the preliminary examination and at trial.

After the prosecution finished its direct examination of the victim, one of defendant's two trial attorneys, James Robinson, explained that his co-counsel, Noah Nightengale, who had prepared to cross-examine the victim before trial, missed at least some of the direct examination because he had to leave the courtroom for an unrelated reason.[1] The trial court gave Nightengale 20 minutes to listen to the tape of the direct examination and prepare. After doing so and assuring

---

[1] Robinson represented that Nightengale "heard quite a bit" of the direct examination, and he seemingly agreed with the trial court that Nightengale only missed about 20 minutes.

the trial court that he had adequate time to listen to the testimony, he briefly cross-examined the victim the same day. The jury ultimately convicted defendant.

After the trial court sentenced defendant, his appellate counsel moved for a new trial, arguing that trial counsel's performance was ineffective because those attorneys failed to impeach the victim with his prior inconsistent statements to the police and at the preliminary examination. Appellate counsel also moved to correct the presentence investigation report (PSIR), arguing that the offense narrative was inconsistent with the victim's trial testimony. However, despite appellate counsel's request, the trial court did not hold a *Ginther*[2] hearing. Instead, the trial court denied both motions and indicated that trial counsel's failure to impeach the victim was a strategic choice. This appeal followed.

## II. INEFFECTIVE ASSISTANCE

Defendant first argues that trial counsel's performance was deficient because Nightengale failed to impeach the victim's trial testimony by confronting him with his prior inconsistent statements.[3]

"A trial court's decision on a motion for a new trial is reviewed for an abuse of discretion." *People v Orlewicz*, 293 Mich App 96, 100; 809 NW2d 194 (2011). "An appellate court should generally defer to the trial court's judgment, and if the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *Id*.

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Spears*, 346 Mich App 494, 502; 13 NW3d 30 (2023) (quotation marks and citation omitted). "All findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Id*. at 503 (quotation marks and citation omitted). "A trial court's findings of fact are clearly erroneous if, after a review of the entire record, the appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. at 502 (cleaned up). Because the trial court did not hold a *Ginther* hearing, "our review of this issue is limited to errors apparent from the record." *Id*. at 503.

Criminal defendants have a constitutional right to the assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. This includes the right to the effective assistance of counsel. *People v Otto*, 348 Mich App 221, 231; 18 NW3d 336 (2023). To obtain relief for ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] As an initial matter, we note that defendant attempted to expand the record on appeal by asking this Court to consider police reports that were never entered into the lower-court record. However, "a party may not expand the record on appeal, which consists of the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced." *People v Gingrich*, 307 Mich App 656, 659 n 1; 862 NW2d 432 (2014) (quotation marks and citation omitted). Nonetheless, we will consider the police reports for completeness.

reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The defendant has the burden to establish the factual predicate for claims of ineffective assistance. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Further, the defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. Trial counsel is not required to impeach each contradictory aspect of a witness's testimony. *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). Generally, an attorney's decision to avoid delving into all contradicting testimony on cross-examination is a matter of trial strategy. *Id*.

Defendant first argues that trial counsel was ineffective because his two attorneys were not prepared to cross-examine the victim. However, Nightengale assured the trial court that he was prepared to cross-examine the victim after the court gave him 20 minutes to review the testimony that he missed. Absent evidence that Nightengale was unprepared, we cannot find that his performance was defective on this basis. See *People v Dunbar*, 463 Mich 606, 617 n 13; 625 NW2d 1 (2001) ("[I]n the absence of evidence to the contrary, we will accept a licensed attorney's assertion to a court.").

Defendant also argues that trial counsel's performance was ineffective because Nightengale, or Robinson, failed to impeach the victim's trial testimony by cross-examining the victim about his prior inconsistent statements. Specifically, defendant identifies five areas of the victim's trial testimony that were purportedly inconsistent with the victim's prior statements: (1) the details of the first assault, (2) the frequency of oral sex, (3) the third-party assaults, (4) the victim's physical injuries, and (5) defendant's use of a firearm.

We have previously recognized numerous reasons why a competent attorney might, as a valid trial strategy, refrain from cross-examining a complaining witness in a child sexual abuse case. See *People v Gioglio*, 296 Mich App 12, 26; 815 NW2d 589 (2012), vacated in part and remanded on other grounds 493 Mich 864 (2012). For example, "a reasonably competent lawyer might want to avoid the appearance of bullying the witness, might believe that the complainant's testimony can best be undermined by pointing out inconsistencies with other testimony, and might want to avoid elaboration on damaging points of testimony." *Id*. Here, however, neither Nightengale nor Robinson testified about their trial strategy, and we acknowledge that Nightengale's cross-examination of the victim was brief and only highlighted about one inconsistency in the victim's trial testimony compared with his prior statements. Thus, in the absence of evidence to the contrary, we may assume that trial counsel performed deficiently through Nightengale's cross-examination of the victim.

Nonetheless, there is no reasonable probability that the outcome of this case would have been different, but for trial counsel's deficient performance on cross-examination. See *Trakhtenberg*, 493 Mich at 51. Having reviewed the inconsistences identified by defendant on appeal, we agree with the prosecution that they generally "relate to peripheral details." Moreover, many of the purported inconsistences are not actually inconsistent. For example, according to defendant, the victim provided the following inconsistent statements regarding the first alleged assault:

**[First Police Report]** – Said during first assault that that Ronald walked in, closed the door, put his arm around the victim, said "you are going to learn today," then Ronald pulled down the victim's shorts and got on top of him who was face down on the floor, and he was then anally penetrated by Ronald.

**[Second Police Report]** – Said the first assault occurred on his 11th birthday. Ronald locked the bedroom door, told him to take off his clothes, threatened to punch him in the face, then shoved him down on the bed, punched him in the face, and anally penetrated him.

**[Preliminary Exam]** – When asked about the first assault, the witness said: "It was on my 11th birthday. I can remember like no one else was home, it was only me there, and he had came into my room and had made me take my clothes off, and then had made me bend over my bed before he put his penis inside of me."

**[Jury Trial]** – When asked about the first assault, the witness said "I had gotten woken up in my room by Ron and he was telling me that he wanted me to close my eyes and that he had a present for me and when I opened my eyes, he was naked in front of me . . . he told me that he was going to be fucking me that night . . . after that, he made me take my pants off and made me bend over the bed and put his dick inside of me."

There are a few relatively minor inconsistences in these four versions of the first assault, such as whether the sexual assault itself occurred on the floor or on the bed. However, the overall story is consistent, as the victim generally explained that the first assault occurred on his eleventh birthday, in his bedroom, that defendant began the encounter with one or two sarcastic comments about his intentions, and that the assault involved anal penetration. Thus, while trial counsel could have, and perhaps should have, cross-examined the victim about the few inconsistences between these statements, it is difficult for us to discern how the victim's credibility would have been significantly undermined. This is particularly so in light of the fact that the jury likely would have heard about the overall consistencies as well as the inconsistent details in the statements. The four other areas of the victim's testimony identified by defendant on appeal as being inconsistent with the victim's prior statements generally also concern collateral matters.[4]

Further, the victim was not the only witness to provide incriminating evidence against defendant. The officer who wrote the police reports and the victim's friends testified about their respective experiences in talking to the victim about the abuse. Defendant's brother-in-law and

---

[4] In addition, we also note that some of the comments highlighted by defendant appear to be taken out of context. For instance, defendant observes that when the prosecution asked the victim at trial, "Did you know that he had a gun in the house at that point?", the victim replied in the negative. According to defendant, the victim's testimony here was inconsistent with his multiple prior statements indicating that he was afraid of defendant because defendant had a firearm. However, when the victim's trial testimony is considered in context, it is apparent that the victim actually was testifying that he was unaware that defendant had a firearm until the first sexual assault, not that he was unaware that defendant had a firearm throughout his entire childhood.

his former coworker described defendant's firearm. Most importantly, the jury heard a recording from defendant's police interrogation, in which defendant indicated that there was "a fifty-fifty" chance that his penis "slipped out" of his shorts and rubbed the victim's bare anus while defendant carried him on one occasion. In the interrogation, defendant also admitted to physically abusing the victim, including repeatedly striking the victim in the back of the head, consistent with the victim's testimony. Moreover, as explained by Detective Lieutenant Timothy Heliin, defendant admitted that he "would lie at times to protect himself." Given the interrogation tape and the testimony against defendant, there is no reasonable probability that trial counsel would have changed the outcome of this case if Nightengale, or Robinson, had attempted to impeach the victim's trial testimony regarding largely collateral matters with his prior inconsistent statements. See *id*.

For these reasons, we conclude that any ineffective assistance by trial counsel in cross-examining the victim did not create a reasonable probability of a different outcome. Therefore, the trial court did not abuse its discretion by denying defendant's motion for relief from judgment.

III. PSIR

Defendant also argues that his PSIR requires correction. "We review for abuse of discretion the trial court's decisions regarding the information in a defendant's PSIR." *People v Lampe*, 327 Mich App 104, 120; 933 NW2d 314 (2019).

Defendant asserts that his PSIR offense narrative was inconsistent with the victim's testimony. However, defendant failed to identify which facts in the offense narrative contradicted the victim's trial testimony or how any of the alleged contradictions may have had a "determinative effect" on his sentence or future corrections status. See *People v McAllister*, 241 Mich App 466, 473; 616 NW2d 203 (2000) (noting that a trial court's failure to correct alleged inaccuracies in a PSIR may constitute harmless error "when the alleged inaccuracies would have no determinative effect on the sentence"); *People v Maben*, 313 Mich App 545, 555; 884 NW2d 314 (2015) ("Maben was entitled to challenge the accuracy of the information [in the PSIR], particularly considering that the content could have consequences in prison and with the parole board."). For example, defendant summarily asserts that "[p]aragraph 1 [of the PSIR] seems to be taken from the second police report. Information in paragraph 1 is contradicted by the complaining witness' statements in the first police report, the preliminary examination and the jury trial." This is insufficient to present the issue for our review. "[A]n appellant may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013) (quotation marks and citation omitted). Because defendant abandoned this issue, we need not address it on appeal. Similarly, defendant also has abandoned any argument that his trial counsel was deficient in failing to object to the PSIR offense narrative.[5]

---

[5] Regardless, we have reviewed the PSIR offense narrative and cannot identify any details therein that are inconsistent with the victim's trial testimony while also having some prejudicial effect on

## IV. CONCLUSION

There were no errors warranting relief.  Accordingly, we affirm.

/s/ Michael F. Gadola
/s/ Michael J. Riordan
/s/ Anica Letica

---

defendant.  In other words, although defendant would be entitled to have the PSIR amended to omit any false information therein that would possibly have a prejudicial effect as to his parole consideration or prison restrictions, we cannot readily identify such false information.